FILED
2009 Jul-06  PM 02:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MALCOLM FREEMAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:08-CV-335-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Malcolm Freeman brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB"). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

## I.      Procedural History

Plaintiff was born December 10, 1953 and has a high school education. (Tr. 87-89, 225). Plaintiff began working in 1972 at a steel plant as a mixer operator. (Tr. 53-55). He alleges he has been unable to engage in substantial gainful activity since January 1, 2003 due to asbestosis, urinary problems, high blood pressure, and left hand problems. (Tr. 54, 79). Plaintiff acquired sufficient quarters of coverage to remain insured through December 2008. (Tr. 54, 224).

Plaintiff filed an application for disability and DIB on January 27, 2005. Plaintiff's application was denied initially and also upon review. (Tr. 45). Plaintiff timely filed a request for

a hearing before an administrative law judge ("ALJ").  A hearing was scheduled and held on October 3, 2006 before ALJ Jerry Land. (Tr. 38, 222-45).

In his January 16, 2007 decision, the ALJ determined that Plaintiff suffers from severe impairments of hypertension and a history of asbestosis and obesity which preclude him from performing his past work as a mixer operator.  However, the ALJ further determined that these impairments, or combination of impairments, do not meet or medically equal one of the listed impairments in the Act.  The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work.  (Tr. 19-26).  Plaintiff's RFC consists of what he can do despite his impairments.

On January 23, 2007, Plaintiff filed a request for a review of the ALJ's decision.  (Tr. 14-15).  Plaintiff's request was denied by the Appeals Council on December 21, 2007 and that denial made the ALJ's decision the final decision of the Commissioner, and therefore, a proper subject for this court's review.  (Tr. 4-6).  This action for judicial review was filed by and through counsel on February 25, 2008.  (*See* Pl's Comp.).

At the October 3, 2006 hearing, Plaintiff testified that he had quit work due to his medical problems, including frequent urination.  (Tr. 226).  However, Plaintiff reported in his psychiatric evaluation to Dr. Cynthia Neville, "I got tired of working around the clock.  I poured hot iron all day and was on my feet all day." (Tr. 167).  Although Plaintiff retired from his job in 2002, the medical record evidence does not show that he received medical treatment from May 2001 (when he was admitted in to the emergency room for a hernia) until March 2004 (when he was admitted into the emergency room complaining of stomach pain).  (Tr. 121-34).

On December 9, 2004, Plaintiff arrived at American Family Care and reported experiencing increased saliva production. (Tr. 140). Plaintiff was treated by Dr. Holsey Drake who noted Plaintiff weighed 308 pounds and had a significantly elevated blood pressure of 180/124. (*Id.*). Plaintiff reported to Dr. Drake that Viagra was the only medication he was currently taking. (Tr. 140, 209). Dr. Drake prescribed Uniretic to control Plaintiff's blood pressure and instructed him to discontinue his use of Viagra. (*Id.*).

On March 16, 2006, Plaintiff returned to Dr. Drake for treatment of nosebleeds and reported that he was not currently taking any medication. (Tr. 196). Plaintiff's blood pressure was 180/104 and he was prescribed Micardis for hypertension and Lipitor for elevated cholesterol. (Tr. 196). In a follow-up visit on March 23, 2006, Plaintiff reported he was feeling better but his blood pressure continued to be elevated at 156/100. (*Id.*). Dr. Drake increased Plaintiff's dosage of Micardis. (*Id.*) Plaintiff again saw Dr. Drake on May 8, 2006 who noted that Plaintiff's hypertension was uncontrolled and additional medications were prescribed. (Tr. 195). On September 23, 2006, Dr. Drake noted that Plaintiff's hypertension remained uncontrolled as a result of non-compliance with medication. (Tr. 193). Additionally, Plaintiff's weight had increased to 324 pounds. (Tr. 193).

Plaintiff was seen by Dr. Edward Holmes in December 1994 and it was noted that he should reduce his exposure to asbestos. (Tr. 92). Although there is no objective medical evidence that Plaintiff is disabled from working or has required treatment for symptoms related to his exposure to asbestos, Plaintiff testified that under advisement from Dr. Drake, he walks two miles a day to alleviate the shortness of breath he experiences when he sits or stands for extended periods of time. (Tr. 232-34). Dr. Drake's treatment notes do not reflect that Plaintiff complained of shortness of breath or symptoms related to any pulmonary disease, or that he has been prescribed any medication

for this impairment. (Tr. 193-95, 203, 209). The results of a state agency ordered pulmonary function test ("PFT") administered on June 18, 2005 by Dr. Mark Downey revealed a pulmonary exam negative for bronchospasm and no evidence of wheezing. (Tr. 152-55).

Plaintiff also complains of urinary problems which cause him to frequently visit the restroom. (Tr. 65, 226). In July 1999, Plaintiff was admitted into the emergency room with urethritis. (Tr. 112). After several follow up visits and a medication regimen, Plaintiff was found to be "much better" by his attending physician, Dr. Leon Hamrick. (Tr. 109-10). No prostate or urinary problems were reported by Dr. Hamrick in a November 2004 visit. (Tr. 116). Additionally, no prostate or urinary problems were reported by Dr. Drake. (Tr. 193-96, 203, 209).

 Plaintiff also listed complaints with his left hand. In 1989, Plaintiff was admitted into the emergency room with a gunshot wound to his left shoulder. (Tr. 95-99). Plaintiff attributes this gunshot wound as the reason he has problems with his left hand. (Tr. 238).

From his June 18, 2005 PFT findings, Dr. Downey opined that Plaintiff could be expected to stand and/or walk at least six hours during an eight hour work day with no restrictions for sitting. (Tr. 155). Additionally he found Plaintiff could be expected to lift 100 pounds occasionally and 50 pounds frequently with no postural, manipulative or environmental limitations. (Tr. 155).

A physical capacity evaluation ("PCE") and a clinical assessment of pain, and a clinical assessment of fatigue and weakness was conducted on behalf of Plaintiff by Dr. Drake on September 23, 2006. (Tr. 217-221). Dr. Drake opined that during an eight hour day, Plaintiff could sit zero hours per day and stand and/or walk for one hour per day. (*Id.*). Additionally, Dr. Drake stated that Plaintiff would be limited to lifting 20 pounds occasionally and 10 pounds frequently. (*Id.*). Dr. Drake further stated that Plaintiff could use his upper and lower extremities for occasional pushing

and pulling movements, but he is never to climb, use his left hand for fine manipulation, or to work around hazardous machinery, dust, allergens, or fumes.  (*Id.*).  Dr. Drake also opined that pain was not present to a significant degree, but physical activity such as walking, standing, bending, stooping and moving of extremities would increase Plaintiff's pain, fatigue and weakness to such a degree as to cause distraction or total abandonment of tasks. (Tr. 218). In the clinical assessment for fatigue, Dr. Drake stated that the condition was present in Plaintiff, but not to such a degree as to prevent functioning in every day activities or work.  (Tr. 220).

At the October 3, 2006 hearing, the ALJ presented a hypothetical question to the vocational expert ("VE") Normal Stricklin. The VE was asked to give a representation of work available for an individual who could perform light work with the same age, educational background and past relevant work experience as Plaintiff.  (Tr. 241).  The VE stated that the individual in the hypothetical would be able to obtain work as a cleaner, production or mechanical helper, or assembler, and that there are approximately 24,000 jobs such as these in the State of Alabama.  (*Id.*). The ALJ then posed a hypothetical of an individual with Plaintiff's same impairments, but added the requirement of frequent restroom breaks.  (Tr. 242).  The VE responded that restroom breaks at the frequency Plaintiff described (every 35-40 minutes) would be beyond what is tolerated in a job such as the one held previously by Plaintiff.  (*Id.*).  The ALJ then asked the VE if sedentary work would be more suitable for an individual with Plaintiff's urinary limitation.   The VE responded affirmatively.  (*Id.*).  The ALJ then amended his hypothetical question to the same as before, including frequent bathroom breaks, but for an individual limited to sedentary work.  (*Id.*).  The VE responded that security jobs, inspecting positions, cashier or unskilled clerical jobs–ones where an individual simply answers phones–would be best suited for an individual, such as the one in the

5

hypothetical question.  (*Id.*).  The VE stated there are approximately 5,000 positions of that type available in Alabama.  (*Id.*).  Plaintiff's attorney was given an opportunity to question the VE and asked what type of work Plaintiff would be able to perform based on the findings from Dr. Drake's physical evaluation.  (Tr. 243).  The VE responded less than sedentary; the individual would be limited to less than eight hours per day.  (*Id.*).

## II.     ALJ Decision

Determination of disability under the Act requires a five-step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that he can no longer perform his past employment, "the burden

then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2003, the alleged onset date of disability. (Tr. 21). Although the ALJ determined that Plaintiff has the following severe impairments: hypertension, history of asbestosis, and obesity, he determined that Plaintiff's statements concerning his impairments and their impact on his ability to work cannot be fully credited as the objective medical evidence does not support the severity of symptoms alleged by Plaintiff. (Tr. 23). The ALJ determined that Plaintiff retains the RFC to perform the exertional demands of light work as described in the Act. (Tr. 24).

The VE called to testify at Plaintiff's hearing, who was familiar with Plaintiff's background, testified that his past relevant work as a mixer operator is described by the Department of Labor as heavy and semiskilled. (Tr. 240). When asked to consider Plaintiff's age, education, work experience, and assigned RFC, the VE opined that Plaintiff could find work as a cleaner or in a light labor position such as production or as a mechanical helper. (Tr. 241). When asked to consider the same hypothetical, but to factor in Plaintiff's issue with frequent bathroom breaks, the VE responded that sedentary work would be more accommodating and that Plaintiff would be able to find work in a security position or unskilled clerical work where the individual simply answers the telephone. (Tr. 242). Based on the VE's testimony and her assessment of Plaintiff's RFC, in addition to the opinions of the examining physician and the medical records, the ALJ found that Plaintiff is capable of performing light work. (Tr. 24).

III.    **Plaintiff's Argument for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period to file objections, reversed, or in the alternative, remanded for further consideration.  (Doc. 6 at 9).  Plaintiff asserts five reasons why this court should grant the relief sought:   (1) the ALJ erred in rejecting the treating physician's opinion; (2) the evidence supports a finding of disability under the Medical Vocational Guidelines; (3) the ALJ did not adequately consider obesity in his determination; (4) the ALJ's RFC findings are inconclusive; and (5) the ALJ erred in his credibility findings.

IV.    **Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42, United States Code, Sections 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (*citing Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (*quoting Bloodsworth*, 703 F.2d at 1239) (other citations

omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.   Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

### A.   The ALJ Did Not Err in Rejecting the Treating Physician's Opinion

Plaintiff's first argument is that the ALJ erred in rejecting Dr. Drake's opinion contained in his PCE, the clinical assessment for pain, and the clinical assessment for fatigue/weakness.  Dr. Drake stated in the PCE that during an eight hour day, Plaintiff could sit zero hours per day and stand and/or walk for one hour per day.  (Tr. 217).  Additionally Dr. Drake stated that Plaintiff could use his upper and lower extremities for occasional pushing and pulling movements, but he is never to climb, use his left hand for fine manipulation or to work around hazardous machinery or dust, allergens or fumes.  (*Id.*).  In his clinical assessment for pain, Dr. Drake opined that pain was not present in Plaintiff to a significant degree, but that physical activity would increase Plaintiff's pain to such a degree as to cause distraction or total abandonment of tasks.  (Tr. 218).  In his clinical assessment for fatigue/weakness, Dr. Drake stated fatigue/weakness was present in Plaintiff, but not to such a degree to prevent functioning in everyday activities. (Tr. 220). Dr. Drake further stated fatigue/weakness was greatly increased by physical activity.

9

As Defendant correctly points out, the opinion of a physician, even a treating physician, may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.  *See* 20 C.F.R. § 404.1527(d); SSR 96-2p; *Crawford v. Comm'r. of Soc. Sec.*, 363 F.3d 1152, 1159-60; *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41.  The weight afforded a medical source's opinion on the issue of the nature and severity of a claimant's impairment depends on the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.  *See* 20 C.F.R. 20 § 404.1527(d); SSR 96-2p, 61 Fed. Reg. 34,490, 1996 WL 374188.

Based on the medical evidence, the court concludes that the ALJ did not err in rejecting the opinion of Plaintiff's treating physician, Dr. Drake.  Plaintiff's lab results, progress notes, and other medical records over a period of twenty months do not support the conclusions in Dr. Drake's PCE. The ALJ has discretion to reject conclusions made by the treating physician if the opinion is not congruent with treatment and other diagnosis made by the treating physician. "The ALJ properly considered the medical assessment of the treating physician because there were no findings supporting his sitting and walking limitations and because the doctor did not indicate how or to what extent the claimant's manipulative limitations would limit h[im] and there was no evidence of record upon which any manipulative limitations could be based." *Johnson v. Barnhart,* 268 F. Supp. 2d 1317,1327-28 (M.D. Fla. 2002). In the present case, no objective evidence exists in the medical records that lead to or support the conclusions that were made by Dr. Drake in his assessment for pain and fatigue/weakness. Furthermore, the assessments made by Dr. Drake contain internal

inconsistencies, stating that pain is not present in Plaintiff, but that physical activity greatly increases pain. (Tr. 218). Additionally, as the ALJ noted in his opinion, Dr. Drake's medical treatment of Plaintiff does not support the conclusions of the PCE he performed. (Tr. 22). Dr. Drake treated Plaintiff for hypertension and elevated cholesterol. (Tr. 193-96). Dr. Drake prescribed Uniretic and Micardis for Plaintiff's uncontrolled blood pressure and Lipitor for elevated cholesterol. (Tr. 196, 203). There is no evidence in the record that Dr. Drake treated Plaintiff for pain, fatigue or weakness, which further demonstrates an inconsistent opinion made by Dr. Drake in his PCE and clinical assessment for pain and fatigue/weakness.

Plaintiff further argues that the ALJ should have inferred the symptoms of pain, fatigue and weakness from his obesity, and therefore should have considered those factors in his RFC findings. The ALJ found that Plaintiff suffers from obesity and considered that condition in his RFC findings. (Tr. 21). However, the medical records do not show, and Plaintiff failed to present evidence to support, a finding of disabling pain, fatigue or weakness due to obesity. Therefore, the ALJ's finding that Dr. Drake's opinion is inconsistent with the objective medical evidence, and therefore deciding to reject his opinion, is supported by substantial evidence and not in err.

## B. The Evidence Supports a Finding that Plaintiff is Not Disabled Under the Medical Vocational Guidelines

The ALJ found, based on the testimony of the VE and taking into consideration Plaintiff's age, education, work experience and RFC, that Plaintiff has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy, and therefore a finding of not disabled is appropriate. Plaintiff argues that based on the combination of impairments found by the ALJ, an RFC for sedentary at best would better suit him. Plaintiff states that with no

11

transferrable skills, and unable to perform his past relevant work with an RFC for even the full range of sedentary work, Plaintiff would be disabled under Medical Vocational Guidelines ("GRIDS") 201.14.  Although Plaintiff suggests that he should be found disabled under GRIDS 201.14, he overlooks the fact that his skill-set is not unskilled, as determined by the VE, and therefore would not qualify him under GRIDS 201.14.  GRIDS 201.14 requires a determination of unskilled in order to be considered disabled.  (*See* 42 OASDI Regs, 20 C.F.R Pt. § 404.1599, T. 20, Ch. III, Pt. 404, Subpt. P, Subpt. P, App. 2, 42 U.S.C.A.App.).  The evidence supports a finding of "not disabled" under the GRIDS because Plaintiff has the presence of a sufficient skill set, as he has thirty years experience with heavy, semi-skilled work, in addition to exceeding the educational requirement with a high school education.  (Tr. 53-55, 87-88).

Plaintiff takes issue with the fact that the ALJ asked the VE for suggestions of sedentary work although he found Plaintiff capable of light work.  The record indicates that the ALJ asked the VE to suggest jobs falling in the sedentary category in order to accommodate the impairments claimed by Plaintiff, such as trouble breathing and frequent bathroom breaks.  The ALJ sought to meet the burden of the fifth step by showing other work Plaintiff could perform.  Despite asking for suggestions of sedentary work, evidence from the record (*i.e.*, Plaintiff walks two miles per day and is able to perform all household chores and personal hygiene without assistance) supports the ALJ's conclusion that Plaintiff can perform light work, and at the very least sedentary work.  (Tr. 74, 169, 231).

### C.    The ALJ's Findings Are Supported By Substantial Evidence

Plaintiff's next argument is that the ALJ's findings are not based on substantial evidence at any exertional level because it does not adequately address all of Plaintiff's conditions and

limitations. Plaintiff argues that environmental restrictions and considerations in light of his pulmonary problems and non-exertional factors with respect to obesity should have been considered in the ALJ's hypothetical to the VE.  Defendant argues that Plaintiff failed to provide evidence of pulmonary problems or limitations resulting from obesity that would prevent him from performing the requirements of light work.

The court finds no error in the ALJ's findings because his conclusions are supported by substantial evidence, including Plaintiff's objective medical records, a psychiatric evaluation conducted by Cynthia Neville, a physical performance test performed by Dr. Downey, and the information provided by the VE.  (Tr. 95-145, 152-56, 167-70, 193-212, 240-44).  In *Dowdy v. Barnhart,* the court held that the ALJ's assessment of the claimant's RFC was supported by substantial evidence, finding that the claimant had failed to present medical evidence that her shoulder condition limited her in any way following surgery to repair a torn rotator cuff.  (*Dowdy v. Barnhart,* WL 3841868 (M.D. Ala. Jan 4, 2005)).  Similar to the present case, Plaintiff has failed to show that his impairments have limited him in any way.  In fact, Plaintiff testified that he is able to walk two miles a day on most days, as well as handle household chores such as cooking, grocery shopping, mowing the grass, and personal hygiene without any assistance. (Tr. 75-76, 169, 231 ).  Additionally, Plaintiff indicated that those tasks had not been affected since the onset of his condition.  (Tr. 75-76). In addition to frequent bathroom breaks, Plaintiff claims that because of his impairment he can neither sit nor stand for long periods of time due to trouble breathing.  However, Plaintiff failed to present any objective medical evidence to support this claim.

Although Plaintiff failed to meet his burden of proving disability, the ALJ throughly and sufficiently reviewed Plaintiff's medical records and made his determination based on the record as

13

a whole.  Although Plaintiff complains of urinary trouble, the medical records indicate that he has not been treated for such a condition since 2001.  (Tr. 119).  Additionally Plaintiff complains of pain, fatigue and weakness, and Dr. Drake noted fatigue and weakness in his clinical assessments, but Plaintiff has not been treated by a doctor at any time for any of these three symptoms, and takes no medication to alleviate pain.[1]  Plaintiff suggests that the ALJ should have inferred the symptoms of pain, fatigue and weakness from obesity.  However, no objective medical evidence exists to support such an inference.  Therefore, substantial evidence supports the ALJ's finding and his decision correctly reflects those findings.

### D.     The ALJ Did Not Err in His Credibility Findings

Plaintiff's final argument is that the ALJ erred in finding his statements concerning the intensity, persistence and limiting effects of his symptoms not entirely credible.  Plaintiff reports frequent urination, hypertension, shortness of breath, pulmonary problems, history of asbestosis and obesity.  (Tr. 224-30).  However, Plaintiff has not been treated for any prostate or urinary problems since 2001.  (Tr. 119).  Although Dr. Hamrick noted in August 1999 that Plaintiff suffers from asbestosis, and Plaintiff was given a similar report by Dr. Holmes in 1994, the severity of Plaintiff's condition cannot be measured due to a lack of medical records pertaining to treatment of asbestosis.  (Tr. 92, 100, 115).  Additionally, after a state ordered pulmonary exam, Dr. Downey found that Plaintiff's pulmonary exam was negative of any evidence of acute bronchospasm with breath sounds clear and no evidence of wheezing.  (Tr. 155).  As mentioned above, no records exist to indicate that Plaintiff has been treated for pain. This lack of medical records for treatment of pulmonary or urinary

---

[1]Plaintiff was seen during an emergency room visit on January 23, 1999, complaining of pain in his leg.  (Tr. 113).

problems or pain, coupled with Dr. Downey's findings, support the ALJ's decision of discrediting Plaintiff's subjective complaints.

## VI.    Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____6th_____ day of July, 2009.

_____

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE